The undersigned have reviewed the prior Opinion and Award based on the record of the proceedings before Deputy Commissioner Kim L. Cramer. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-trial Agreement and at the hearing as
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers Compensation Act.
2. The employee-employer relationship existed between plaintiff-employee and defendant-employer on December 5, 1996.
3. Hatteras Yachts was self-insured and Gallagher Bassett Services, Inc. was the third party administrator on December 5, 1996.
4. The parties are properly before the Commission for hearing and the Commission has jurisdiction over this matter.
5. Plaintiff had an average weekly wage of $625.00, with a compensation rate of $417.00.
6. After the hearing before the Deputy Commissioner, the parties took the depositions of John McQuade, M.D., and Peter Kussin, M.D., and transcripts of those depositions were received into evidence.
 * * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows
 FINDINGS OF FACT
1. Plaintiff, born on October 20, 1956, was 41 years of age on the date of the hearing before Deputy Cramer. He quit school in the eighth grade to work, but later returned and completed through the 11th grade. He has some community college training in automotive bodywork.
2. Plaintiff began working for defendant-employer Hatteras Yachts in December 1980. Plaintiff began working in the laminating department as a gel coater, a position in which he had exposure to chemical epoxy resins. Within seven months of his hiring, on June 24, 1981, plaintiff underwent a pulmonary function study, which showed chronic asthma. As part of that evaluation, Plaintiff responded to a questionnaire which indicated that he was aware of a prior diagnosis of asthma and that coming to work did not seem to affect his asthma. This questionnaire also indicated that plaintiff wore a respiratory device when gel coating.
3. Following the pulmonary function evaluation of June 24, 1981, plaintiff was placed in a protective suit which enclosed his upper body to the waist and which filtered the air he was breathing.
4. Plaintiff underwent another pulmonary function evaluation in January 1984. The results showed moderately severe obstructive pulmonary disease. As a result of this test, plaintiff was subsequently transferred out of his gel coating job to the maintenance department, where he began working in the tool crib. In this position, plaintiff did not have constant exposure to potential airborne irritants.
5. While working in the tool crib, plaintiff was responsible for the maintenance and repair of equipment. The tool crib was heated and air conditioned. Plaintiff used an air hose to blow off dusty equipment. While in maintenance, plaintiff also helped issue chemicals. He had access to a respirator if needed, while distributing these chemicals. Plaintiff continued working in the maintenance department for over ten years.
6. Plaintiff has a complicated medical history, which includes heart problems since childhood, with catheterizations in 1969, 1970 and 1977 and open heart surgery in 1970 when he was approximately 14 years old. Plaintiff also has a long history of gastrointestinal problems and has been diagnosed with gastroesophageal reflux disease (GERD). By January 1996, plaintiffs treating physician, Dr. John McQuade, began to suspect that plaintiff suffered from an infection of H. pylori bacteria which would cause gastritis. Plaintiff also smoked for about four years as a teenager.
7. Plaintiff was first diagnosed with possible asthma in 1977. Heart problems can lead to a shortness of breath and GERD can aggravate asthma. By September 1985, Dr. McQuade had diagnosed plaintiff with moderately significant asthmatic bronchitis.
8. Plaintiff complained of breathing difficulty and asthma attacks periodically throughout his employment with Hatteras Yachts. It appears that most of these complaints were made to the employers health staff after January 1984.
9. Plaintiffs testimony was vague and difficult to follow. The undersigned did not find plaintiffs testimony itself to be very persuasive. However, plaintiffs treating physicians, Dr. McQuade and Dr. Kussin, are of the opinion that plaintiffs asthma is related to his occupational chemical exposures.
10. On November 21, 1996, plaintiff was evaluated by Dr. Peter Kussin, a pulmonary specialist at Duke. Dr. Kussin examined plaintiff and did various tests, including x-rays and pulmonary function tests. He also reviewed the material safety data sheets (MSDS) which listed the chemicals to which plaintiff had been exposed during his employment with defendant-employer.
11. Dr. Kussin noted that several of the chemicals listed on the MSDS could cause asthma and virtually all of them were respiratory irritants. He is of the opinion that plaintiffs exposure to these chemicals most likely exacerbated his asthma and that plaintiffs employment placed him at a greater risk than the general public of developing asthma or exacerbating asthma. Even though GERD may be contributing to his asthma as well, his occupational exposure is a significant contributing factor. Dr. Kussin did not find the prior cigarette smoking to be a primary contributing factor, especially since plaintiff had not smoked for many years.
12. Plaintiff had asthma before he began working for defendant-employer. However, based upon the testimony of both Dr. McQuade and Dr. Kussin, plaintiffs exposure to chemicals while working for defendant-employer significantly exacerbated his pre-existing asthma to the point that plaintiffs physicians recommended he leave that environment.
13. Dr. Kussin recommended to plaintiff that he leave his employment with defendant-employer so that he would not be exposed to chemicals, which would aggravate his asthma. Pursuant to this medical advice, plaintiff left his employment with defendant-employer on December 12, 1996.
14. Plaintiff sought other employment and obtained a CDL license for truck driving. He did not locate a position until April 7, 1997, when he began working as a truck driver for Riggs, at a wage less than his prior weekly wage with defendant-employer.
15. On June 2, 1997, plaintiff purchased a tractor and became a self-employer driver. As of that time, he was making the same or substantially the same wage as when he worked for defendant-employer. The only factor that changed between April 7, 1997 and June 2, 1997 was plaintiffs purchase of his own tractor, such that he effectively became self-employed. There is no indication that plaintiffs physical condition or wage earning capacity changed between April 7, 1997 and June 2, 1997.
16. Plaintiff still has occupational asthma, which is a permanent condition. While being away from chemical exposure may lessen his symptoms or attacks, it is not a cure. Plaintiff has a significant permanent impairment to his lungs.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission concludes as follows
 CONCLUSIONS OF LAW
1. Plaintiffs employment duties with defendant-employer Hatteras Yachts were a significant contributing factor in the aggravation of his pre-existing asthma. Plaintiffs employment with defendant-employer placed him at an increased risk as compared to the general public of developing asthma or exacerbating asthma. Plaintiffs asthma is an occupational disease pursuant to N.C. Gen. Stat. 97-53(13).
2. As a result of his occupational asthma, plaintiff had to leave his employment on December 12, 1996. He was unable to earn wages in his prior employment or any other employment and therefore temporarily totally disabled until April 7, 1997. Consequently, plaintiff is entitled to benefits at his compensation rate of $417.00 per week from December 13, 1996 through April 6, 1997. N.C. Gen. Stat. 97-29.
3. As a result of his occupational asthma, plaintiff has sustained permanent injury to his lungs for which he is entitled to compensation in the amount of $10,000.00 for damage to an important internal organ pursuant to N.C. Gen. Stat. 97-31(24).
4. Plaintiff is entitled to and presumed to elect the most munificent remedy. N.C. Gen. Stat. 97-31; N.C. Gen. Stat. 97-30.
5. Plaintiff is entitled to have defendants pay for reasonably necessary medical expenses related to his occupational asthma, which tend to effect a cure, provide relief or lessen the period of disability. N.C. Gen. Stat. 97-25.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following
 AWARD
1. Defendants shall pay all reasonably necessary medical expenses incurred or to be incurred by plaintiff due to his occupational asthma, which tend to effect a cure, provide relief or lessen the period of disability.
2. Defendants shall pay plaintiff compensation at the rate of $417.00 as total disability benefits from December 13, 1996 through April 6, 1997. Such benefits having accrued are to be paid in a lump sum, subject to the attorneys fee approved hereinafter.
3. Defendants shall pay plaintiff the lump sum amount of $10,000 as compensation for permanent damage to his lungs, subject to the attorneys fee approved hereinafter.
4. A reasonable attorneys fee of twenty-five percent of the compensation awarded plaintiff herein is approved for his counsel.
5. Defendants shall pay the costs due the Commission.
This the ___ day of March 2000.
 S/ ______________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ _______________________ RENÉE C. RIGGSBEE COMMISSIONER
DCS:nwg